IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CAPODIECE and<br>TERRY L. CAPODIECE,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>WELLS FARGO BANK and DOES 1–5,<br><br>　　　　Defendants.<br>　　　　　　　　　　　　　　　　　　　／ | No. C 13-00032 WHA<br><br>**ORDER GRANTING PARTIAL SUMMARY JUDGMENT; GRANTING IN PART REQUEST FOR JUDICIAL NOTICE; GRANTING MOTION TO DISMISS; AND DENYING MOTION TO STRIKE AS MOOT** |

## INTRODUCTION

In this wrongful-foreclosure action, defendant filed a motion to dismiss plaintiffs' complaint. A previous order converted defendant's motion into one for partial summary judgment. To the extent below, partial summary judgment is **GRANTED** and defendant's motion to dismiss is **GRANTED**. Defendant's motion to strike portions of plaintiffs' complaint is **DENIED AS MOOT**.

## STATEMENT

**1.  ALLEGED FACTS.**

In 2005, plaintiffs Michael and Terry Capodiece took out a loan with World Savings Bank to obtain a residential property in Hollister (Dkt. No. 8, Exh. A). They also executed a deed of trust in favor of World Savings Bank, as lender and beneficiary, and Golden West Savings Association Service Company, as trustee (Exh. B). In 2007, World Savings Bank

changed its name to Wachovia Mortgage, FSB (Exh. D). In 2009, it again changed its name to Wells Fargo Bank Southwest, N.A. before merging into defendant Wells Fargo Bank, N.A. (Exh. E). Wells Fargo is now the successor-in-interest. In 2011, a notice of default and election to sell under deed of trust was recorded at the San Benito County Recorder's Office (Exh. H). In 2012, an individual named Ric Juarez allegedly signed and filed a substitution of trustee that swapped out Gold West Savings with NDEX West, LLC (Compl. ¶¶ 10–12).

Plaintiffs' complaint is essentially two-fold. *First*, plaintiffs allege the substitution of trustee was a fraud because: Ric Juarez was not an authorized agent of Wells Fargo; the notary improperly acknowledged Ric Juarez's signature without ascertaining Ric Juarez's identity; or the notary's signature was a forgery (*id.* at ¶¶ 13–17). Therefore, according to plaintiffs, NDEX West was improperly substituted and Golden West Savings is still the deed of trust's trustee (*id.* at ¶ 18). *Second*, plaintiffs allege that Wells Fargo violated California Civil Code Section 2923.5 by not properly contacting them about their financial situation and that the notice of default improperly included fraudulent fees and charges (*id.* at ¶¶ 19–20, 22). The complaint alleges six state-law claims: five against Wells Fargo, and one against the notary. Wells Fargo, a citizen of South Dakota, removed this action from state court on diversity grounds. It then moved to dismiss under FRCP 12(b)(6).

### 2. PROCEDURAL HISTORY AFTER THE FIRST HEARING ON DEFENDANT'S MOTION TO DISMISS.

The first hearing on defendant's motion to dismiss was on April 11, 2013. Plaintiff's counsel, Emmanuel Fomukong Fobi, failed to appear at the hearing, and instead arranged for another lawyer to make a "special appearance." This was done without notice and in violation of the local rules. Because of plaintiff's counsel's absence and the replacement counsel's lack of familiarity with this action, this Court was unable to hold a normal hearing on the motion to dismiss. Pursuant to FRCP 12(d), an order dated April 12 converted the motion to dismiss into one for partial summary judgment. At issue was whether Ric Juarez was properly authorized to sign the substitution of trustee. Defendant filed several declarations to establish that Ric Juarez and NDEX West had such authorization. In response, plaintiff filed a declaration generally

2

1 claiming further discovery is required. This order now examines the motion for partial summary
2 judgment before proceeding to analyze the motion to dismiss.

## ANALYSIS

As a preliminary matter, this order declines to take judicial notice of the declaration appended to the notice of default (Dkt. No. 8, Exh. H, Loney Decl.). Alleged facts sworn to in an extra-file declaration do not become gospel via a request for judicial notice. The facts stated therein can still be subject to dispute. But because the other documents are matters of public record not generally subject to dispute, judicial notice of them is appropriate under FRE 201. Therefore, this order refuses to take judicial notice that "[t]he borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys" (*ibid.*). Defendant's request for judicial notice is **GRANTED IN PART AND DENIED IN PART**.

### 1. LEGAL STANDARD.

#### A. Summary Judgment.

Summary judgment is proper when the pleadings and the evidence in the record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). An issue is genuine only if there is sufficient evidence for a reasonable fact-finder to find for the non-moving party, and material only if the fact may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248–49 (1986).

#### B. Motion to Dismiss.

To survive a FRCP 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, states a claim for relief plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A facially plausible claim will specify sufficient factual allegations from which reasonable inferences establishing the defendant's liability can be drawn. *Ibid.* While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). This "plausibility standard" is not a probability requirement. *Ibid.* Still, "it asks more than a

sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Ibid.* (quoting *Twombly*, 550 U.S. at 557) (internal quotations marks omitted).

In all averments of fraud, however, the circumstances constituting fraud must be stated with particularity. FRCP 9(b). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2001) (citation omitted). A complaint must set forth what is false or misleading about a statement and why it is false — not merely neutral facts identifying the transaction. *Ibid.* This order will now consider each claim.

### 2. RIC JUAREZ WAS PROPERLY AUTHORIZED TO SIGN THE SUBSTITUTION OF TRUSTEE.

The declarations filed by defendant establish that Ric Juarez was properly authorized to execute the substitution of trustee, while plaintiff offers no evidence to the contrary. On April 9, 2010, Wells Fargo gave NDEX West limited power of attorney to "execute all documents necessary and appropriate to conduct or vacate customary and reasonably necessary and appropriate for the management and prosecution of foreclosure matters on behalf of Wells Fargo" (Pummill Decl, Exh. B). These responsibilities included the execution of substitutions of trustee and grant deeds (*ibid.*). The instrument conferring this limited power of attorney was signed by Jaimee Gonzales, a vice president of Wells Fargo, who "overs[aw] the activities of all of Wells Fargo's vendors providing foreclosure services including those of NDEX" (Gonzales Decl. at ¶ 3).

Jaimee Gonzales also stated that Wells Fargo authorized NDEX West to execute and record the substitution of trustee at issue here (*ibid.*). NDEX West's president files a declaration attesting that Ric Juarez was authorized to execute and record the substitution of trustee at issue here, on behalf of NDEX West (Pummill Decl. ¶ 7). Finally, Ric Juarez confirms that he signed the substitution of trustee (Juarez Decl. ¶ 4). In contrast, plaintiff's counsel offers nothing useful to rebut any of defendant's declaration. Instead, plaintiff's counsel filed a declaration to insist there "*may* be varying signatures of Rick [sic] Juarez" (Fobi Decl. ¶ 3, Dkt. No.30) (emphasis

4

added).  This is insufficient to establish a disputed issue of material fact or to justify a further delay for more discovery.  Furthermore, if counsel had wished to present an expert handwriting analysis, as stated at oral argument, then counsel could have and should have done so in opposition to the motion for partial summary judgment.  This order finds there is no genuine dispute that Ric Juarez was properly authorized, and to that extent, partial summary judgment is **GRANTED**.  This order now proceeds to the remaining issues raised in defendant's motion to dismiss.

### 3. PLAINTIFFS' FIRST CLAIM IS DISMISSED.

Wells Fargo does not move to dismiss plaintiffs' first claim, "notorial misconduct," presumably because the claim is not alleged against it.  Rather, plaintiffs allege that "Brooke L. Ewing notarized a document without properly ascertaining the identity of the signer[]" (Compl. ¶ 41).  The complaint's caption does not name Brooke L. Ewing as a defendant, and there is no record that Brooke L. Ewing was ever properly served.  Therefore, plaintiffs' first claim is **DISMISSED WITHOUT PREJUDICE**.  Plaintiffs may file another complaint against Brooke L. Ewing in some other court if they so choose, subject to motion practice there.  Or, plaintiffs may seek leave to amend this pleading, as set forth below, provided that the amended pleading is promptly served on Ewing together with the summons.  This order makes no ruling on whether Ewing would be subject to personal jurisdiction here.

### 4. PLAINTIFFS' FIFTH CLAIM IS PREEMPTED BY HOLA.

For their fifth claim, plaintiffs allege that Wells Fargo violated California Civil Code Section 2923.5, which requires notice of default to borrowers (*id*. at ¶¶ 20–21, 32).  In response, Wells Fargo contends it was exempted from Section 2923.5 compliance because "plaintiffs have agreed to surrender the property[]" and that plaintiffs' Section 2923.5 claim is preempted by the Home Owners Loan Act ("HOLA") (Mot. at 7) (citing Cal. Civ. Code § 2923.5(h) (2012)).  This order agrees that plaintiffs' Section 2923.5 claim is preempted here.

Our court of appeals has held that the Office of Thrift Supervision ("OTS") and HOLA preempt the entire field of lending regulations for federal savings associations.  *Silvas v.*

5

*E*Trade Mortg. Corp.*, 514 F.3d 1001, 1005 (9th Cir. 2008) (citing 12 C.F.R. 560.2). The relevant portion of 12 C.F.R. 560.2 reads:

> *OTS hereby occupies the entire field of lending regulation for federal savings associations.* OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section.

12 C.F.R. 560.2(a) (emphasis added). Illustrative examples of state law preempted under paragraph (b) include:

> (9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages[.]

12 C.F.R. 560.2(b)(9)–(10). Areas of state law exempted from preemption under paragraph (c) include contract and commercial law, real property law, and tort law. 12 C.F.R. 560.2(c). Our court of appeals also outlined the proper test as to whether state law is preempted under 12 C.F.R. 560.2:

> [T]he first step will be to determine whether the type of law in question is listed in paragraph (b). If so, the analysis will end there; the law is preempted. If the law is not covered by paragraph (b), the next question is whether the law affects lending. If it does, then, in accordance with paragraph (a), the presumption arises that the law is preempted. This presumption can be reversed only if the law can clearly be shown to fit within the confines of paragraph (c). For these purposes, paragraph (c) is intended to be interpreted narrowly. *Any doubt should be resolved in favor of preemption.*

*Silvas*, 514 F.3d at 1005 (quoting OTS, Final Rule, 61 Fed. Reg. 50951, 50966–67 (Sept. 30, 1996)) (emphasis added).

Previous orders by the undersigned judge have held, on similar facts, that HOLA applied to a loan which originated with a bank regulated by the Office of Thrift Supervision but subsequently merged with a national bank. *Hrdina v. World Sav. Bank, FSB*, No. C 11-5173

6

WHA, 2012 WL 294447 at *4 (N.D. Cal. Jan. 31, 2012); *Johannson v. Wachovia Mortg. FSB*, No. C11-2822 WHA, 2011 WL 3443952 at *8 (N.D. Cal. Aug. 5, 2011).

Our court of appeals has not yet reached the issue of whether Section 2923.5 is preempted. Previous orders by the undersigned judge have held that HOLA may not preempt claims involving state laws that only incidentally affected lending operations, such as "state-law contract claims [which] . . . challeng[e] [a] defendant's general conduct of stalling, avoiding . . . requests and refusing to accept payments, [and] not the substance of its lending practices such as terms of credit, disclosures, or advertising[,]" *Avila v. Wells Fargo Bank*, No. C 12-1237 WHA, 2012 WL 2953117 at *11 (N.D. Cal. July 19, 2012), or claims involving "laws against fraud and unfair business practices [which] apply broadly to all businesses and their practices," *Rodriguez v. U.S. Bank Nat'l Ass'n*, No. C 12-0989 WHA, 2012 WL 1996929 at *7 (N.D. Cal. June 4, 2012).

In our circuit, other judges have ruled that Section 2923.5 is preempted by HOLA. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291 (S.D. Cal. 2011) (Judge Marilyn Huff); *Ahmed v. Wells Fargo Bank & Co.*, No. C 11-0436 SI, 2011 WL 1751415 (N.D. Cal. May 9, 2011) (Judge Susan Illston); *Taguinod v. World Sav. Bank, FSB*, 755 F. Supp. 2d 1064 (C.D. Cal. 2010) (Judge Stephen Wilson); *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119 (N.D. Cal. 2010) (Judge Jeremy Fogel); *Parcray v. Shea Mortg. Inc.*, No. 09-1942, 2010 WL 1659369 (E.D. Cal. Apr. 23, 2010) (Judge Oliver Wanger). This order will follow that body of precedent. In doing so, this order recognizes that the argument that HOLA preempts any state statute which "affects lending" goes too far. Under that test, California's entire traditional regime within its civil code for regulating deeds of trusts and trustee sales would be preempted. No court has ever so held, and indeed thrifts as well as national banks have sought to reap the benefits of California's traditional system. Nonetheless, this order shall follow the overwhelming body of case law in this circuit as to the preemption of Section 2923.5.

As in *Taguinod*, plaintiffs here cite *Mabry v. Superior Court*, 185 Cal. App. 4th 208 (2010), for the proposition that Section 2923.5 is not preempted by HOLA. *Taguinod*, 755 F. Supp at 1073–74. But as Judge Stephen Wilson aptly noted, not only is *Mabry* the

7

only California court to explicitly hold that Section 2923.5 is not preempted, "[t]his is not a question of interpreting state law, but rather a question of federal preemption[,]" so the *Mabry* holding is not binding. *Id.* at 1074.

Therefore, plaintiffs' fifth claim is **DISMISSED**. This order also notes that even the *Mabry* decision recognized that relief under Section 2923.5 cannot include damages as plaintiffs request here; the sole available remedy under Section 2923.5 is postponement of a foreclosure sale. *Mabry*, 185 Cal. App. 4th at 226. If the sale already occurred, no remedy is available. *Stebley v. Litton Loan Servicing LLP*, 202 Cal. App. 4th 522, 526 (2011) (citing *Mabry*, 185 Cal. App 4th at 235–236). Plaintiffs do not disclose the status of any such sale. According to defendant, however, a trustee's sale of the property was set for January 18, 2012, but that date was continued pursuant to plaintiffs filing for bankruptcy (Mot. at 2).

### 5. PLAINTIFFS' SECOND CLAIM MUST BE DISMISSED.

Plaintiffs's second claim is an alleged violation of California Business and Professional Code Section 17200. Section 17200 "prohibits unfair competition, including unlawful, unfair, and fraudulent business acts." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003) (citations omitted). "Each prong of . . . [Section 17200] is a separate and distinct theory of liability." *Birdsong v. Apple, Inc.*, 590 F.3d 955, 959 (9th Cir. 2009). Section 17200 "covers a wide range of conduct. It embraces anything that can properly be called a business practice and that at the same time is forbidden by law." *Korea Supply*, 29 Cal.4th at 1143 (citations omitted). The statute "borrows violations from other laws by making them independently actionable as unfair competitive practices. In addition, under Section 17200, a practice may be deemed unfair even if not specifically proscribed by some other law." *Ibid*. (citations omitted).

According to plaintiffs, relief under Section 17200 would be proper because Wells Fargo failed to comply with California Civil Code Sections 2924 and 2923.5, "among other laws" (Compl. ¶ 52). Their Section 17200 claim, however, fails for two reasons. *First*, plaintiffs only provide details regarding Wells Fargo's alleged Section 2923.5 violation. Since plaintiffs' Section 2923.5 claim is preempted by HOLA here, a Section 17200 claim based on a Section

8

2923.5 violation cannot survive. This order finds that plaintiffs do not adequately plead any other grounds for a Section 17200 claim. *Second*, "[t]o have standing to bring a claim under [Section 17200], a private plaintiff must show that it 'has suffered injury in fact and has lost money or property as a result of' unfair competition." *Pom Wonderful LLC v. Coca-Cola Co.*, 679 F.3d 1170, 1178 (9th Cir. 2012) (quoting Cal. Bus. & Prof. Code § 17204). While plaintiffs do allege in a conclusory manner that they "suffered injury in fact" (Compl. ¶ 56), they do not allege *how* they lost any money or property as a result of any Section 17200 violation, or even what money or property they lost. Therefore, plaintiffs' second claim is **DISMISSED**. In any amended complaint, plaintiffs must (if true) adequately plead in non-conclusory terms a Section 17200 claim based on grounds other than Section 2923.5, as well as what injury they suffered.

### 6. PLAINTIFFS' FOURTH CLAIM MUST BE DISMISSED.

For their fourth claim, plaintiffs allege slander of title. "Slander or disparagement of title occurs when a person, without a privilege to do so, publishes a false statement that disparages title to property and causes the owner thereof some special pecuniary loss or damage." *Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 975 (N.D. Cal. 2012) (Judge Edward M. Chen) (quoting *Sumner Hill Homeowners' Ass'n, Inc. v. Rio Mesa Holdings, LLC*, 205 Cal. App. 4th 999, 1030 (2012)) (internal quotation marks omitted). The tort's elements include: "(1) a publication, (2) without privilege or justification, (3) falsity, and (4) direct pecuniary loss." *Id.* (citing *Sumner Hill*, 205 Cal. App. 4th at 999).

Here, plaintiffs allege many, but not all, of the elements necessary for slander of title. Plaintiffs allege that the substitution of trustee was false because the signatory, Ric Juarez, was not authorized to sign it. This then "rendered Plaintiffs' title to the Subject Property as unmarketable[]" (Compl. ¶ 68). Putting aside for the moment that partial summary judgment was granted, establishing Ric Juarez's authorization, plaintiffs offer no well-pleaded, non-conclusory allegations as to what direct pecuniary loss they suffered (if any) from the alleged slander of title. Plaintiffs do not even allege whether their home was foreclosed on. Therefore, plaintiffs' fourth claim is **DISMISSED**. In any amended complaint, plaintiffs must

9

allege (if true) what pecuniary harm they suffered in non-conclusory terms and what other basis (if any) exists for this claim.

### 7. PLAINTIFFS INCORRECTLY FRAME PRAYERS FOR RELIEF AS INDEPENDENT CLAIMS.

Finally, plaintiffs characterize their request for declaratory and injunctive relief as their third independent claim (*id*. at ¶¶ 57–65), and refer to their request for an order "vacating and setting aside the Notice of Trustee's Sale" as their sixth independent claim (*id.* at ¶ 83). These cannot be independent claims — they are types of remedies. If and when plaintiffs seek leave to amend their complaint, declaratory and injunctive relief may be sought as part of their prayer for relief — not as independent claims for relief.

### CONCLUSION

To the extent above, partial summary judgment is **GRANTED** and Wells Fargo's motion to dismiss is **GRANTED**. Wells Fargo's motion to strike is **DENIED AS MOOT**. Plaintiffs may seek leave to amend their complaint and will have until **MAY 30, 2013,** to file a motion, noticed on the normal 35-day track, for leave to file an amended complaint. Plaintiffs should plead their best case. The motion should clearly explain how the amendments cure the deficiencies identified herein, and should include as an exhibit a redline or highlighted version of the new complaint identifying all changes. If such motion is not filed by the deadline, this case will be closed and judgment entered.

**IT IS SO ORDERED.**

Dated: May 9, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE